UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| KEITH C. WYLIE, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Docket No. 3:03CV000426(JCH) |
| | ) | |
| JOHN E. POTTER, Postmaster General | ) | |
| | ) | |
| Defendant | ) | October 7, 2004 |

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

### Procedural Background

Plaintiff, Keith C. Wylie, is a former employee of the United States Postal Service ("Postal Service"). At all times relevant to this action, he was a mail handler at the Southern Connecticut Processing and Distribution Center, in Wallingford, CT. Local Rule 56(a)(1) Statement ¶ 1.

Plaintiff filed this action, claiming discrimination based upon race, gender and disability, in connection with the termination of his employment from the Postal Service. Local Rule 56(a)(1) Statement ¶ 12.

Prior to commencing this action, plaintiff sought EEO counseling and filed a formal complaint of discrimination with the Postal Service, alleging discrimination based upon race, color and gender. Local Rule 56(a)(1) Statement ¶¶ 6, 8.

1

## Factual Background

In September 1999, the Postal Service proposed to terminate plaintiff's employment from his position as a mail handler. The proposed termination was resolved when plaintiff and the Postal Service entered into a "last chance agreement" ("LCA"), dated November 18, 1999. *Ex. 1, pp. 6, 47-49.*

In February 2000, the Postal Service again proposed to terminate plaintiff's employment, due to plaintiff's breach of the terms of the LCA. Plaintiff's union filed a grievance and the proposed termination was resolved by, *inter alia,* an extension of the effective time of the LCA. *Ex. 1. pp. 6, 50-51.*

On June 18, 2001, plaintiff received a notice of termination of his employment from the Postal Service, due to plaintiff's violation of the LCA. *Ex. 1, pp. 42-44.* Plaintiff violated the LCA by virtue of have an excessive number of unscheduled absences and episodes of tardiness, in the period from November 24, 2000 to June 13, 2001. *Ex.1, pp. 6, 42-44.*

In response to the notice of termination, plaintiff initiated the Postal Service equal employment opportunity ("EEO") complaint process. The process proceeded through its several stages and plaintiff's claims were subsequently dismissed. Plaintiff thereafter initiated the instant civil action.

During the Postal Service EEO process, plaintiff claimed that his termination was motivated by discrimination based upon his race, color and gender. Local Rule 56(a)(1) Statement ¶¶ 4, 6. However, in the instant case, plaintiff claims that his termination was animated by discrimination based upon his race, gender and disability. Local Rule 56(a)(1) Statement ¶ 12. The

allegation of disability discrimination was not raised, nor exhausted, in the Postal Service EEO complaint process.

## Argument

(a)  Standard of Review

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c). "A party opposing a properly brought motion for summary judgment bears the burden of going beyond the pleadings, and 'designat[ing] specific facts showing that there is a genuine issue for trial.'" Amnesty America v. Town of W. Hartford, 288 F. 3d 467, 470 (2d Cir. 2002) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986)). "The court must resolve all ambiguities and draw all inferences in favor of the non-moving party." Westinghouse Credit Corp. v. D'Urso, 278 F.3d 138, 145 (2d Cir. 2002). However, "[a] dispute is not 'genuine' unless 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party." New York Stock Exchange, Inc. v. New York, 293 F.3d 550, 554 (2d Cir. 2002) (quoting Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986)). To survive a motion for summary judgment, a plaintiff must produce more than merely some evidence to support a rational finding of discrimination; he must produce sufficient evidence that the legitimate, non-discriminatory reasons proffered by the defendant were false and that illegal discrimination was the real reason for



the challenged employment action. Braheney v. Town of Wallingford, 2004 U.S. Dist. LEXIS 5515 (D. Conn. 2004) (citing cases).

(b)    Applicable Law

   1)    Race/Color Discrimination

In order to prevail on a claim of race discrimination, a plaintiff must prove a *prima facie* case by a preponderance of the evidence. Collins v. New York City Transit Authority, 305 F. 3d 113, 118 (2d Cir. 2002). To establish this *prima facie* case, a plaintiff must show that (1) he was a member of a protected group; (2) he was qualified for his employment position; (3) he was subject to an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of discrimination. Id. A plaintiff sustains an adverse employment action if he sustains a materially adverse change to the terms and conditions of her employment. See Galabya v. New York City Board of Education, 202 F. 2d 636, 640 (2d Cir. 2000) (termination of employment or material loss of benefits constitutes an adverse employment action).

   2)    Gender Discrimination

To establish a *prima facie* case of gender discrimination, a plaintiff must prove that (1) he belonged to a protected class; (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent. See Terry v. Ashcroft, 336 F. 3d 128, 138 (2d Cir. 2003). If a plaintiff establishes a *prima facie* case, the defendant must proffer a legitimate,

non-discriminatory reason for the challenged action. See Weinstock v. Columbia University, 224 F. 3d 33, 42 (2d Cir. 2000), cert. denied, 157 L. Ed. 2d 24, 124 S. Ct. 53 (Oct. 6, 2003). Once the defendant produces its legitimate, non-discriminatory reason, the plaintiff must then offer evidence sufficient to support a rational finding that the defendant's proffered reason was false and that, more than likely, gender discrimination was the real reason for the adverse employment action. Van Zant v. KLM Royal Dutch Airlines, 80 F. 3d 708, 714 (2d Cir. 1996) (quoting Woroski v. Nashua Corp., 31 F. 3d 105, 110 (2d Cir. 1994).

### 3) *Disability Discrimination*

The familiar burden-shifting scheme of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 36 L. Ed. 2d 668, 93 S. Ct. 1817 (1973), applies to claims made pursuant to the Americans with Disabilities Act ("ADA").[1] See Heyman v. Queens Village Comm. for Mental Health, 198 F.3d 68, 71 (2d Cir. 1999).

In order to establish a *prima facie* of disability discrimination, a plaintiff must prove that: (1) he is an individual with a disability; (2) he is otherwise qualified to perform his duties, with or without a reasonable accommodation; (3) he has suffered an adverse employment action because of his disability; and (4) the employer is subject to the Rehabilitation Act. Smith v. Potter, 2004 U.S. Dist LEXIS 15162 (D. Conn. 2004) (Docket No. 3:03CV471(DJS).

In order to establish a claim that he is "disabled" under the Rehabilitation Act, a plaintiff must demonstrate that: (1) he suffers from a physical or mental

---

[1] The Rehabilitation Act (which is the federal employee remedy for disability discrimination in employment) standards are the same as the ADA standards. See 29 U.S.C. § 794(d).

5

impairment; (2) he must identify the activity claimed to be impaired and establish that it constitutes a "major life activity" and (3) that the identified "major life activity" is substantially limited. Potenza v. City of New York, 95 Fed. Appx. 390 (2d Cir. 2004).

An "individual with a disability" is defined as a person who has, has a record of, or is regarded as having a physical or mental impairment which substantially limits one or more of that person's major life activities. 29 C.F.R. pt. 1630, App. § 1630.2(g) *et seq.* "The determination of whether an individual has a disability is not necessarily based on the name or diagnosis of the impairment the person has, but rather on the effect of that impairment on the life of the individual." Sutton v. United Airlines, 527 U.S. 471, 483 (1998), citing 29 C.F.R. pt. 1630, App. § 1630.2(j).

Merely having an impairment does not make one disabled for purposes of the statute; a claimant must also show that the impairment substantially limits a major life activity. Toyota Motor Manufacturing, Kentucky, Inc. v. Williams, 534 U.S. 184, 195, 122 S. Ct. 681, 690 (2002). Major life activities are "those activities that are of central importance to daily life." Id. at 195, 122 S. Ct. at 690. According to the governing regulations, "substantially limited" means "unable to perform a major life activity that the average person in the population can perform"; or "significantly restricted as to the condition, manner or duration under which an individual can perform a major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity." 29 C.F.R. pt. 1630, App. §

6

1630.2(j). The Supreme Court, pointing to the legislative findings and purposes of the ADA, emphasized that the terms "major life activity" and "substantially limited" must be "interpreted strictly to create a demanding standard for qualifying as disabled." Toyota at 196-197, 122 S. Ct. at 690-691.

The basis for the requirement that, in order to fall within the coverage of the Rehabilitation Act an individual must have an impairment which substantially limits a major life activity was articulated by one court as follows:

> The Act . . . assures that truly disabled, but genuinely capable individuals will not face discrimination in employment because of stereotypes about the insurmountability of their handicaps. It would debase this high purpose if statutory protections available to those truly handicapped could be claimed by anyone whose disability was minor and whose relative severity of impairment was widely shared. Indeed, the very concept of an impairment implies a characteristic that is not commonplace and that poses for the particular individual a more general disadvantage in his or her search for satisfactory employment.

Forrisi v. Bowen, 794 F.2d 931, 933-934 (4th Cir. 1986).

Major life activities include functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working. See 29 C.F.R. § 1614.203(i). With respect to the major life activity of working, the term "substantially limited" means significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. See 29 C.F.R. § 1614.203(j)(3)(i). The inability to perform a single, particular job does not constitute a substantial limitation of the major life activity of working. Id. See also Sutton v. United Air Lines, Inc., 527 U.S. 471, 119 S. Ct. 2139, 2151(1999).

### *(4) Timely Exhaustion of Administrative Remedies*

In order to pursue his rights under the anti-discrimination laws, a plaintiff must first initiate contact with an EEO counselor in an effort to resolve the matter informally. 29 C.F.R. § 1614.105(a); Briones v. Runyon, 101 F.3d 287, 289-90 (2d Cir. 1996). This contact must be made within 45 days of the allegedly discriminatory act. 29 C.F.R. § 1614.105(a)(1); Janneh v. Runyon, 932 F. Supp. 412, 416 (N.D.N.Y. 1996). Absent a basis for tolling, failure to initiate contact within 45 days renders the claim time barred in any future civil actions. Boos v. Runyon, 201 F.3d 178, 184 (2d Cir. 2000).

A federal employee's suit after failure to avail himself of his administrative remedies, or after failure to avail himself of those remedies in a timely fashion, deprives a federal court of subject matter jurisdiction to hear that employee's claim." Dillard v. Runyon, 928 F. Supp. 1316,1323 (S.D.N.Y. 1996), aff'd, 108 F.3d 1369 (2d Cir. 1997). When a claimant files an action pursuant to the Rehabilitation Act, he is required to follow EEOC regulations. Downey v. Runyon, 160 F.3d 139,145 (2d. Cir. 1998). The Rehabilitation Act incorporates the procedures and remedies set forth in Section 717 of Title VII, 42 U.S.C. § 2000e-16 (race, color, religion, sex, natural origin, or reprisal). See Hall v. U.S. Postal Service, 857 F.2d 1073, 1078 n.4 (6th Cir. 1988); Boyd v. United States Postal Service, 752 F.2d 410, 413-14 (9th Cir. 1985); Gardner v. Morris, 752 F.2d 1271, 1278 (8th Cir. 1985); Smith v. United States Postal Service, 742 F.2d 257, 260-62 (6th Cir. 1984) (per curiam); Prewitt v. United States Postal Service, 662 F.2d 292, 304 (5th Cir. 1981); Hargens v. U.S. Department of Agriculture,

8

865 F.Supp. 1314, 1323 (N.D. Iowa 1994); Damage v. United States Postal Service, 643 F.Supp. 1, 6 (D. Conn. 1984).

Section 717(c) of Title VII grants an aggrieved employee the right to file a civil action in district court, "provided that the employee has met certain requirements regarding exhaustion of remedies." Loeffler v. Frank, 486 U.S. 549, 559, 108 S.Ct. 1965, 1971 (1988). Section 717 also grants the EEOC the authority to "issue rules, regulations, orders and instruction as it deems necessary and appropriate to carry out its responsibilities . . ." 42 U.S.C. § 2000e-16(b) (1994). A federal employee must comply with EEOC regulations in order to exhaust administrative remedies. Dillard v. Runyon, 928 F.Supp. 1316, 1323 (S.D.N.Y. 1996).

In order to comply with EEOC regulations, the aggrieved employee must first consult a counselor with the EEOC within 45 days of the alleged discriminatory conduct. 29 C.F.R. § 1614.105(a) (1)(1995). The EEO counselor must then notify the claimant, in writing, of his rights and responsibilities, including any "administrative and court time frames." 29 C.F.R. § 1614.105(b). If, after a mandatory thirty day counseling period the matter cannot be resolved informally, the EEO counselor must inform the claimant in writing of his right to file a discrimination complaint with the agency. 29 C.F.R. § 1614.105(d). The claimant must then file a complaint within fifteen days of receiving the notice from the EEO counselor. 29 C.F.R. § 1614.105(d). The agency is then required to conduct a formal investigation of the matter brought forth by the claimant. 29 C.F.R. 1614.106(d)(2). If the agency dismisses the matter, the claimant may: (1)

9

appeal the dismissal to the EEOC or (2) file a civil action in federal district court. 29 C.F.R. 1614.110.

### *Analysis of Plaintiff's Claims*

*1)    Race/Color Discrimination*

Plaintiff claims that he was terminated from his employment due to his race and color. As basis for this claim, plaintiff alleges that Ronald Sacco, the manager who observed plaintiff away from his assigned duty station on June 13, 2001, harbored racial animus toward him. Specifically, plaintiff alleges that Sacco had, in years prior to 2001, made comments relating to plaintiff's conversations with Caucasian females. *Deposition of Keith Wylie ("Wylie Deposition), attached hereto as Ex. 2, pp. 15-19.* However, plaintiff conceded that Sacco's alleged comments were in the nature of "joking" and that "...it was no major problem with work or anything because he [Sacco] didn't work with [plaintiff]. *Wylie Deposition, pp. 17-18.*

Sacco also made decisions relative to particular driving assignments for plaintiff but Sacco never said anything that indicated that Sacco's decisions relative to plaintiff's assignments were based on plaintiff's race, color or gender. *Wylie Deposition, pp. 21, 23.* Further, Sacco was not the only managerial official who supervised plaintiff during his employment at the Wallingford mail processing facility. *Wylie Deposition, p. 20.* When plaintiff felt that he was treated unfairly by Sacco relative to his assignment, plaintiff enlisted the aid of his union and the specific dispute or grievance was resolved through the collective bargaining-related grievance process. *Wylie Deposition, pp. 23-25.*

A plaintiff's "purely conclusory allegations of discrimination, absent any concrete particulars" are insufficient to defeat a motion for summary judgment. See Cameron v. Community Aid for Retarded Children, Inc., 335 F. 3d 60, 63 (2d Cir. 2003) (quoting Meiri v. Dacon, 759 F. 2d989, 998 (2d Cir. 1985)).

The critical time in this case is June 13, 2001 and shortly thereafter. Plaintiff has failed to offer any credible evidence that Sacco's actions of June 13, 2001, were animated by illegal considerations.

When he issued plaintiff the AWOL notice on June 13, 2001, Sacco considered the particular circumstances of the other employees he found at the table with the plaintiff and issued AWOL notices to other Postal Service employees, including at least one white male, Robert Guerette. Local Rule 56(a)(1) Statement ¶ 4.

Prior to June 13, 2001, Sacco had issued AWOL notices to at least three other white males; Steven Liendorf (February 12, 2001), David Gorski (February 12, 2001) and Peter Patel (April 30, 2000). Approximately one month after the incident in which plaintiff received an AWOL notice, Sacco issued three white males, Alan Fleet, Donald Lombardo and Robert Hajnel, letters of warning in connection with these employees taking an extended break from work. Local Rule 56(a)(1) Statement ¶ 5.

Defendant submits that the evidence overwhelmingly establishes that Sacco treated Caucasian employees in precisely the same manner as he treated plaintiff and that plaintiff has offered no evidence that his race or color was considered in the decision to issue him an AWOL notice on June 13, 2001.

11

With respect to the decision to terminate plaintiff's employment, it was supervisor David Tirone, not Sacco, who issued the notice of termination. *Wylie Deposition, p. 33; Ex. 1, pp.* 42-43. More significantly, plaintiff conceded in his deposition that the termination was not "...because of my color or gender or anything. What I am saying is that I received the AWOL because of discrimination to my color and my gender." *Wylie Deposition, pp. 68-69.* Inasmuch as the evidence clearly demonstrates that plaintiff was not singled out on the basis of race or color for the issuance of an AWOL notice and that other, Caucasian, employees received precisely the same treatment by Sacco, the factual basis for plaintiff's claims of race and color discrimination are non-existent.

With respect to the decision to issue a notice of termination, the Postal Service is entitled to significant deference. Absent evidence that a decision was so lacking in merit as to impugn its genuineness, an employer's decision as to criteria for employment decisions is not subject to being second-guessed. See Walsh v. United Cable Technologies Services Corporation, et al, 46 F. Supp. 2d 170, 173 (D. Conn. 1999) (citing Dister v. Continental Group, Inc., 859 F. 2d 1108, 1116 (2d Cir. 1988) (summary judgment granted to employer in connection age discrimination claim arising from organizational reorganization). In the present case, plaintiff had been, on two prior occasions, on the verge of being terminated and was given reprieves, in the form of the LCA and an extension to the LCA. The Postal Service's decision to implement the LCA on June 18, 2001, thereby terminating plaintiff, was based upon a rational basis. Plaintiff does not

contest that the instances cited in the termination notice, as constituting violations of the LCA, are incorrect. Rather, plaintiff claims that the absences should have been protected under the Family Medical Leave Act ("FMLA"). *Wylie Deposition p. 31.*

Notwithstanding his claims relative to FMLA entitlement, Plaintiff has not brought any claim in this action pursuant to the FMLA. In addition, plaintiff was not qualified for FMLA in January 2001 and this disqualification continued through May 14, 2001. Plaintiff received notice of his ineligibility on January 20, 2001, as evidenced by his signature on the delivery receipt for the notice. Local Rule 56(a)(1) Statement ¶ 30, *Ex. 3, attached hereto; Declaration of A. Elliott, Ex. 4, attached hereto.* The dates cited in the LCA, beyond May 14, 2001, involved tardiness, rather than full day absences. *Ex. 1, p. 43.* Defendant respectfully submits that no FMLA claim or affirmative defense has been timely raised or, even if raised, is legally viable.

  2) <u>Gender Discrimination</u>

Plaintiff claims that the Postal Service's action, in issuing him an AWOL notice, was based upon his gender. Defendant respectfully submits that the circumstances, viewed in the light most favorable to plaintiff, do not support a *prima facie* claim of gender discrimination.

The only female employee cited by the plaintiff, as being treated more favorably (regarding receipt of an AWOL notice on June 13, 2001) was Margaret Martell. *Wylie Deposition, pp. 43, 53.* Ms. Martell was seated at the same table with plaintiff and several other, male, Postal Service employees when Sacco

13

approached them. *Wylie Deposition, pp. 40- 44.* As noted earlier, plaintiff and other male employees received AWOL notices. Sacco determined that Martell and another male employee, Jay Romano, were not AWOL and, therefore, he did not issue them AWOL notices. *Ex. 1, p. 10.* Plaintiff conceded at one point in his deposition testimony that Martell was legitimately on a work break when Sacco approached her. *Wylie Deposition, p. 54.* [2] Inasmuch as Ms. Martell was not in an AWOL situation, she was not similarly situated to plaintiff and therefore, she is not a fair comparator to plaintiff in terms of the AWOL notice issue. Even assuming that Martel had lied to Sacco about whether she was legitimately on a break, plaintiff conceded that Sacco did not know that this was a lie. For this reason, plaintiff cannot establish that Sacco's rationale for not issuing an AWOL notice to Martel is a pretext for discrimination. Accordingly, plaintiff cannot meet his ultimate burden of proof on the claim of gender discrimination and the claim should be dismissed.

    3) *Disability Discrimination*

Plaintiff claimed, for the first time in the instant action, that he was a victim of disability discrimination, relative to his receipt of an AWOL notice and the termination of his employment. This claim must fail for two reasons.

First, it is undisputed that plaintiff did not raise a disability discrimination claim at either the counseling request stage, the formal complaint stage or any or stage of the EEO administrative claim process. Plaintiff's failure to raise the disability claim during the administrative processing of his EEO matter is

---

[2] Plaintiff subsequently claimed that Martell had exhausted her breaks and that she had lied to Sacco concerning this issue. However, plaintiff also testified that Sacco did not know that Martel

14

procedurally fatal, inasmuch as plaintiff is barred from raising his disability discrimination claim, for the first time, in the instant case.

The well-established law in this Circuit is that exhaustion of administrative remedies is a prerequisite to prosecuting an employment discrimination claim in the United States District Court. See 29 C.F.R. § 1614.105(a); Briones v. Runyon, 101 F.3d 287, 289-90 (2d Cir. 1996).

Second, even if plaintiff was not barred by his failure to exhaust his administrative remedies, he cannot state a legally cognizable claim under the Rehabilitation Act.

Conceding for purposes of this motion that plaintiff suffers from epilepsy and that epilepsy constitutes an "impairment" pursuant to the applicable legal definition, this fact alone does not establish disability.

It is undisputed that plaintiff's epilepsy is not, in any way, causally related to the conduct that resulted in his receipt of an AWOL notice on June 13, 2001 or to his subsequent termination from employment. Plaintiff testified that his epileptic condition never impacted his ability to perform his work with the Postal Service at that he has never experienced an epileptic episode while working. *Wylie Deposition p. 12, 14.* With respect to activities outside of work, plaintiff testified that his condition would "...slow me down a little bit...I would not go out there and excessively play basketball or anything like that." *Wylie Deposition, p. 14.* Plaintiff's motor vehicle operator's license is not restricted due to his epilepsy. *Wylie Deposition, p. 12.* In fact, plaintiff testified that his condition does

---

was allegedly lying to him about her break. *Wylie Deposition pp. 55-56.*

not significantly impact his life, either at work or outside of his working environment. *Wylie Deposition, p. 13.*

Plaintiff's testimony establishes that no major life activity, including that of working, has been significantly impacted by his epilepsy. In fact, plaintiff has worked a full week for two different employers since June 2001. *Wylie Deposition, pp. 4-6.* Inasmuch as plaintiff's epilepsy does not significantly impact a major life activity, he is not, by definition, "disabled". For this reason, plaintiff cannot state a viable claim of disability discrimination.

For the reasons stated above, defendant respectfully submits that plaintiff cannot make out a disability discrimination claim, even when the evidence is viewed most favorably to him and, therefore, this claim is subject to being dismissed on summary judgment.

## Conclusion

For the reasons set forth above, the defendant respectfully submits that the plaintiff's claims are barred as a matter of law and that entry of summary judgment for the defendant is appropriate.

The Defendant

By his attorney:
KEVIN J. O'CONNOR
United States Attorney

_____
Anthony T. Rice
Special Assistant U.S. Attorney
United States Postal Service
Law Department
Northeast Area Office
Windsor, CT 06006-0170
(860) 285-7098
E-Mail: anthony.t.rice@usps.gov
Connecticut Federal Bar No. ct 22474

## **CERTIFICATE OF SERVICE**

I, Anthony T. Rice, Special Assistant U.S. Attorney, hereby certify that I served a copy of the attached document, by first-class mail, postage prepaid, upon the following persons:

Keith C. Wylie
119 Monroe Street
New Haven, CT 06512

Keith C. Wylie
55 Monroe Street
New Haven, CT 06516

Keith C. Wylie
486 Newhall Street
Hamden, CT 06517

Keith C. Wylie
P.O. Box 9631
New Haven, CT 06533

Dated: October 7, 2004

_____
Anthony T. Rice