## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| KEITH C. WYLIE, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Docket No. 3:03CV000426(JCH) |
| | ) | |
| | ) | |
| JOHN E. POTTER, Postmaster | ) | |
| General | ) | |
| | ) | |
| Defendant | ) | October 7, 2004 |

## DEFENDANT'S LOCAL RULE 56(a)(1) STATEMENT

Defendant submits that the following facts are material to this action and are not subject to any genuine dispute:

1.    Plaintiff, Keith C. Wylie, is a former employee of the United States Postal Service ("Postal Service"). At all times relevant to this action, he was a mail handler at the Southern Connecticut Processing and Distribution Center, in Wallingford, CT. *Wylie Deposition, Exhibit 1 (U.S. Postal Service EEO Case No. 1B-065-0055-0-Report of Investigation)(hereafter referred to as "Ex. 1")  p. 41.*

2.    In September 1999, the Postal Service proposed to terminate plaintiff's employment from his position as a mail handler. The proposed termination was resolved when plaintiff and the Postal Service entered into a "last chance agreement" ("LCA"), dated November 18, 1999. The LCA constituted the settlement of a prior disciplinary action and specifically addressed future episodes of absence and/or tardiness by plaintiff. *Ex. 1, p. 6.*

1

3.      In February 2000, the Postal Service again proposed to terminate plaintiff's employment, due to plaintiff's breach of the terms of the LCA. Plaintiff's union filed a grievance and the proposed termination was resolved by, *inter alia,* an extension of the effective time of the LCA. *Ex. 1, p. 6.*

4.      On June 13, 2001, Ronald Sacco, a Manager, Distribution Operations, for the Postal Service, charged plaintiff with being absent from his duty station without leave ("AWOL"). This occurred when Sacco personally observed plaintiff sitting in the cafeteria area when he was supposed to be in his assigned work area. At this time, Sacco also observed other employees in the cafeteria area, some of whom were on breaks or otherwise off-duty and some who were on duty. Sacco gave AWOL slips to the other employees, in addition to plaintiff, who were on duty, out of their assigned areas. *Ex. 1, pp. 23, 38.*

5.      On June 13, 2001, Sacco issued AWOL notices to other Postal Service employees, including at least one white male, Robert Guerette. Prior to June 13, 2001, Sacco had issued AWOL notices to at least three other white males; Steven Liendorf (February 12, 2001), David Gorski (February 12, 2001) and Peter Patel (April 30, 2000). Approximately one month after the incident in which plaintiff received an AWOL notice, Sacco issued three white males, Alan Fleet, Donald Lombardo and Robert Hajnel, letters of warning in connection with these employees taking an extended break from work. *Ex. 1, p. 12.*

6.      On or about June 14, 2001, plaintiff sought EEO counseling with the Postal Service, alleging discrimination in connection with the termination of his employment, based upon race. *Ex. 1, p. 176.*

2

7.    On June 18, 2001, plaintiff received a notice of termination of his employment from the Postal Service, due to plaintiff's violation of the LCA. Plaintiff violated the LCA by virtue of have an excessive number of unscheduled absences and episodes of tardiness, in the period from November 24, 2000 to June 13, 2001. *Ex. 1, pp. 6, 42-43; 47-49.*

8.    On August 1, 2001, the Postal Service received plaintiff's formal complaint of discrimination in the Postal Service, in which plaintiff alleged discrimination based upon race, color and gender. *Ex. 1, p. 173.*

9.    The Postal Service accepted for investigation plaintiff's formal complaint of discrimination based on race, color and gender. *Ex. 1, p. 168.*

10.    On or about August 20, 2002, the Postal Service transmitted to plaintiff the Report of Investigation ("ROI") into plaintiff's discrimination claims and informed plaintiff of his option to request a hearing before an administrative judge of the Equal Employment Opportunity Commission ("EEOC") or, in the alternative, to request that the Postal Service issue a final agency decision without a hearing. *Ex. 1, pp. MMM-RRR.*

11.    Plaintiff did not request either a hearing before the EEOC or a final agency decision and, therefore, the Postal Service issued a "Notice of Final Decision" on plaintiff's discrimination claims on or about December 18, 2002; which decision dismissed plaintiff's claims and advised plaintiff of his appeal rights to either the EEOC or to the United States District Court. *Ex. 1, pp. FFF-LLL.*

3

12.     Plaintiff filed this action on or about March 11, 2003, claiming

discrimination based upon race, gender and disability, in connection with the

termination of his employment from the Postal Service. *Complaint, ¶ 5.*

13.     On June 10, 2003, EEOC-Office of Federal Operations ("OFO") dismissed

the Complainant's appeal. *Ex. 1, pp. A-C.*

14.     As basis for this claim, plaintiff alleges that Sacco, who issued him the

subject AWOL notice, harbored animus toward plaintiff, due to plaintiff's

race/color.  Specifically, plaintiff alleges that Sacco had, in years prior to 2001,

made comments relating to plaintiff's conversations with Caucasian females.

*Deposition of K. Wylie ("Wylie Deposition"), attached hereto as Exhibit 2, pp. 15-*

*19.*

15.     Sacco's alleged comments were in the nature of "joking" and that "...it was

no major problem with work or anything because he [Sacco] didn't work with

[plaintiff]. *Wylie Deposition, pp. 17-18.*

16.     Sacco made decisions relative to particular driving assignments for

plaintiff. *Wylie Deposition, p. 21.*

17.     Sacco never said anything that indicated that Sacco's decisions relative to

plaintiff's assignments were based on plaintiff's race, color or gender. *Wylie*

*Deposition, p. 23.*

18.     Sacco was not the only managerial official who supervised plaintiff during

his employment at the Wallingford mail processing facility. *Wylie Deposition, p.*

*20.*

4

19.     When plaintiff felt that he was treated unfairly by Sacco, he enlisted the aid of his union and the specific dispute or grievance was resolved through the collective bargaining-related grievance process. *Wylie Deposition, pp. 23-25.*

20.     With respect to the decision to terminate plaintiff's employment, it was supervisor David Tirone, not Sacco, who issued the notice of termination. *Wylie Deposition, p. 33; Ex. 1, pp.* 42-43.

21.     Plaintiff contends that Margaret Martell, another Postal Service employee, lied to Sacco concerning her work break and that she was more favorably treated than plaintiff. *Wylie Deposition, pp. 43, 53.*

22.     Sacco did not know that Postal Service employee Margaret Martel was allegedly lying to him [Sacco] about her break eligibility. *Wylie Deposition, pp. 55-56.*

23.     Plaintiff's alleges that he suffers from epilepsy but that his epileptic condition never impacted his ability to perform his work with the Postal Service. *Wylie Deposition, p. 14.*

24.     Plaintiff has never experienced an epileptic episode while working. *Wylie Deposition, p. 12.*

25.     With respect to activities outside of work, plaintiff testified that his condition would "...slow me down a little bit...I would not go out there and excessively play basketball or anything like that." *Wylie Deposition, p. 14.*

26.     Plaintiff's motor vehicle operator's license is not restricted due to his epilepsy. *Wylie Deposition, p. 12.*

5

27.    Plaintiff's epileptic condition does not significantly impact his life, either at work or outside of his working environment. *Wylie Deposition, p. 13.*

28.    Plaintiff's epileptic condition does not affect his life outside of work. Plaintiff's motor vehicle operator's license is not restricted due to his medical condition. *Wylie Deposition, p. 13.*

29.    Plaintiff's medical condition did not adversely impact his ability to work for the Postal Service. *Wylie Deposition, p. 14.*

30.    On January 13, 2001, the Postal Service notified plaintiff, via certified mail, that he was not eligible for Family Medical Leave Act ("FMLA") leave during the initial portion of 2001. Plaintiff was subsequently FMLA-eligible, as of May 14, 2001. Plaintiff received this notice on January 20, 2001. *January 13, 2001 notice from Postal Service to Keith Wylie, attached hereto as Exhibit 3; Declaration of A. Elliott, attached hereto as Exhibit 4.*

31.    Plaintiff was not terminated from his employment due to his color or gender. *Wylie Deposition, pp. 68-69.*

32.    Ronald Sacco was not involved in the decision to terminate plaintiff's employment with the Postal Service. *Wylie Deposition, p. 33.*

6

The Defendant

By his attorney:
KEVIN J. O'CONNOR
United States Attorney

Anthony T. Rice
Special Assistant U.S. Attorney
United States Postal Service
Law Department
Northeast Area Office
Windsor, CT 06006-0170
(860) 285-7098
E-Mail: anthony.t.rice@usps.gov
Connecticut Federal Bar No. ct 22474

## CERTIFICATE OF SERVICE

I, Anthony T. Rice, Special Assistant U.S. Attorney, hereby certify that I

served a copy of the attached document, by first-class mail, postage prepaid,

upon the following persons:

Keith C. Wylie
119 Monroe Street
New Haven, CT 06512

Keith C. Wylie
55 Monroe Street
New Haven, CT 06516

Keith C. Wylie
486 Newhall Street
Hamden, CT 06517

Keith C. Wylie
P.O. Box 9631
New Haven, CT 06533

Dated: October 7, 2004

Anthony T. Rice